ZIMMER and wife, Respondents, vs. SUNDELL, Defendant: RAAB and others, Appellants.

*February 4—March 11, 1941.*

The cause was submitted for the appellants on the brief of *J. A. DeBardeleben* of Phillips, and for the respondents on that of *L. A. Koenig* of Phillips.

WICKHEM, J.  Joseph McCann and his wife were the original owners of the land in question and both plaintiffs and defendants claim under them.  On December 20, 1928, the McCanns conveyed to Peter P. Raab and wife.  On December 28th Peter Raab died, and his wife, Henrietta became owner of the land by right of survivorship.  On February 4, 1932, Henrietta conveyed to defendants Carl, Viola J., Arthur, and Carrie Raab.  On August 1, 1933, the McCanns conveyed the same land by quitclaim deed to John Gage.  On December 13, 1933, John Gage quitclaimed the land to plaintiffs.  The latter deed was recorded on the date of its execution.  On September 3, 1935, a certificate of survivorship was issued to Henrietta Raab.  On January 28, 1936, defendants recorded the deed from the McCanns to Peter Raab and wife, the certificate of survivorship to Henrietta Raab, and the deed from her to defendants.  On April 2, 1936, the deed from McCann to Gage was recorded.  The trial court found that when plaintiffs and defendants purchased and received conveyances they were unaware of any claim or interest in the land by the others, that they purchased in good faith, and that plaintiffs remained unaware of defendants' claim until in 1937 when they went to pay the taxes and discovered that defendants had paid them.

The conveyance under which plaintiffs claim was subsequent to those under which defendants claim.  While plain-

tiffs' deed was recorded prior to defendants' conveyances, all of the latter were recorded before the deed from the McCanns to Gage, plaintiffs' grantor. Hence, when defendants recorded their conveyances plaintiffs' recorded deed had no apparent connection with or derivation from the McCanns' title—in other words, it was a mere fugitive deed, and plaintiffs were strangers to the title so far as the record disclosed.

It is urged by defendants that in view of this, plaintiffs are not entitled to the protection of the recording statute. So far as important here, sec. 235.49, Stats., provides:

"Every conveyance of real estate within this state hereafter made . . . which shall not be recorded as provided by law shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate . . . whose conveyance shall first be duly recorded."

At the outset, it is important to note that since defendants' conveyances were all prior in time to that of plaintiffs, the latter, except for whatever protection is afforded them by sec. 235.49, Stats., have no title whatever—the title to the premises being entirely out of the McCanns when they conveyed to Gage, plaintiffs' immediate predecessor in title. Plaintiffs' sole standing is as subsequent purchasers in good faith and for valuable consideration who have recorded their deed before defendants' chain of title was recorded. Since in every other respect plaintiffs' situation answers to the calls of the statute, the precise question is whether the fact that plaintiffs' entire chain of title back to the common grantor was not recorded until after defendants' entire chain of title was recorded, deprived plaintiffs of the protection of the statute.

Both parties rely on the case of *Fallass v. Pierce,* 30 Wis. 443. In that case the original owner was Pierce. On March 28, 1859, he mortgaged the premises to one Blanchard. This mortgage was recorded on the date of its execution. On April 2, 1859, Blanchard assigned the mortgage to one Rice.

This assignment was recorded June 21, 1861. Thereafter, Rice assigned the mortgage to the plaintiff Fallass. Meantime, on August 10, 1859, Blanchard quitclaimed to the mortgagor Pierce and released the mortgage. These conveyances were recorded December 8, 1860. On September 19, 1860, Pierce, who took his release with notice of the assignment, conveyed by warranty deed to defendant Parks, who was an innocent purchaser for value but who neglected to put his deed on record until after the assignments of the mortgages to Rice and Fallass were made and recorded. The lower court found that the release to Pierce was void as to plaintiff, and that both Rice and plaintiff were *bona fide* purchasers of the mortgage and entitled to foreclose. The first opinion of this court was that the judgment must be reversed because the assignments had not been recorded at the time Parks purchased, and that being an innocent purchaser for value, Parks was entitled to rely upon the record and to purchase and hold the title against the assignments even though the latter were recorded prior to the time his deed was recorded. Upon rehearing, the court abandoned this position and held that the only person protected by the statute is an innocent purchaser who first records his instrument. The opinion of the court granting the rehearing (which is later by reference adopted as a part of the ultimate decision) states (p. 460):

"The only limitation which can be put upon the statute is, as suggested in *Kennedy v. Northup* [15 Ill. 148] that which the manifest object of the law plainly indicates, namely, that it is to be so construed as to exclude from its protection those who may purchase from strangers to the title. Those persons only are affected with notice by the record, who deal with or on the credit of the title, in the line of which the recorded deed belongs."

This limitation is applicable here. Since plaintiffs purchased from a grantor who had no recorded title going back

to the McCanns, and since the latter appeared upon the record to be the holders of the title, there was nothing in the record for plaintiffs to rely upon. Their grantor was a pure stranger to the title so far as the record disclosed.

In the *Fallass Case, supra,* in the course of holding that a person seeking protection of the statute "must put his deed first upon record" the court further said (p. 458) :

"He is not required to put his deed first upon record in order to be protected as against prior conveyances from his grantor, but only to do so in order to protect himself *against subsequent bona fide purchasers for value, from the same grantor or in the line of recorded conveyances from him.*"

The syllabus by the court in this case is as follows (p. 443) :

"The protection of the recording act (R. S., ch. 86, sec. 25), which declares an unrecorded deed void, as against a subsequent purchaser in good faith, and for a valuable consideration, whose deed shall be first recorded, is *not* confined to a subsequent purchaser *immediately from the same grantor,* but applies to one who takes from him through mesne conveyances; and it protects him, if a purchaser in good faith, for value, *in case the chain of title to him is first on record,* although the intermediate grantees were chargeable with bad faith, or paid nothing."

This syllabus is repeated in *McDonald v. Sullivan,* 135 Wis. 361, 116 N. W. 10.

It is clear to us that the court in the *Fallass Case, supra,* meant to and did hold that persons situated as are the plaintiffs are not entitled to the protection of the statute because their chain of title back to the common grantor was not first recorded. That this is in accord with the obvious purpose of the recording statute seems equally clear. If one who has no title under the laws governing conveyances is to have a superior one under the recording acts, it should be because he has relied upon the record, and when he purchases from one

who is a stranger to the record title he has no grounds for such reliance. In *Burns v. Berry,* 42 Mich. 176, 179, 3 N. W. 924, it was said:

"The protection which this statute gives to a *bona fide* purchaser does not proceed upon the theory, and is not made to depend upon the fact, that the grantor at the time of such conveyance had any interest in the premises whatever, or that any passed from him by his conveyance to such subsequent purchaser. It is not by force of the conveyance, but by the terms of the statute, that such subsequent purchaser acquires title to the premises. His grantor having previously conveyed, has no title left to convey, and could therefore by his deed, unaided by the statute, pass none to any third person. Our registry laws however step in, and for the purpose of protecting an innocent purchaser, give him what he supposed, and from an examination of the records had a right to suppose, he was acquiring by his purchase, and to this extent cut off the previous purchaser who negligenty failed to record his conveyance."

See also *Hallett v. Alexander,* 50 Colo. 37, 114 Pac. 490, 34 L. R. A. (N. S.) 328.

Plaintiffs argue that the term "subsequent purchaser" is not confined to a subsequent purchaser immediately from the same grantor, but applies to one who takes from him through mesne conveyances. *Fallass v. Pierce, supra; Butler v. Bank of Mazeppa,* 94 Wis. 351, 68 N. W. 998. This is perfectly true in principle and authority, but we fail to see how it bears upon the facts of this case. The difficulty with plaintiffs' case is not that they did not take from the same grantor as did defendants. It is that their line of title to the common ancestor was not first recorded.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss plaintiffs' complaint, and to enter judgment for defendants upon their counterclaim.