IN the MATTER OF the ESTATE OF Ellen TROTALLI, deceased: Susan M. DISCH and Lisa A. Disch, by their guardian ad litem and Charles Kyle Kenyon, Jr., guardian ad litem, Appellants-Petitioners,

v.

Angeline Bradanini BETZ, Peter Bradanini, Erma Trotalli Hall, Betty Bradanini Hanson, Albert Trotalli, Mary Jean Trotalli, Estate of Peter Trotalli, Robert Trotalli, Estate of Ellen Trotalli, First Wisconsin National Bank of Madison as Personal Representative in the Estate of Ellen Trotalli, Respondents.

Supreme Court

No. 82–2068. Argued January 30, 1985.—
Decided April 30, 1985.

(Also reported in 366 N.W.2d 879.)

342

For the appellants-petitioners there were briefs by *Charles Kyle Kenyon, Jr.*, and *Kenyon Law Offices*, Tomah, and oral argument by *Mr. Kenyon*.

For the respondents there was a brief by *Carlyle H. Whipple* and *Whipple & Southwell, S.C.*, Madison, and oral argument by *Carlyle H. Whipple*.

SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals filed on July 6, 1984, affirming in part and reversing in part an order of the circuit court for Dane county, Moria Krueger, circuit judge.

The circuit court ordered that no compensation be paid to the guardian ad litem for either services rendered in appealing a circuit court's order construing the decedent's will or for work performed to collect payment of that compensation.

The court of appeals reversed the part of the circuit court's order which refused to allow the guardian ad litem compensation for services rendered in the appeal.

The court of appeals concluded that an award of compensation is within the discretion of the circuit court and that the circuit court abused its discretion in failing to award compensation in this case. The court of appeals remanded the issue of reasonable compensation to the circuit court. We affirm this part of the decision of the court of appeals.

The court of appeals, with Judge Martha Bablitch dissenting, affirmed that part of the circuit court's order which denied the guardian ad litem compensation for his efforts in collecting his compensation. We reverse this part of the decision of the court of appeals.

This dispute about compensation payable to a guardian ad litem has its basis in a probate proceeding to construe the residuary clause in the will of Ellen Trotalli, deceased. The testatrix's will left the residue of the estate to ten named persons *"per stirpes* providing that they survive me."* Two of the named residuary beneficiaries predeceased the testatrix. The words *per stirpes* would permit lineal descendants of the named residuary beneficiaries, here minor children, to take their deceased ancestor's share, while the words "survive me" would indicate that each of the named residuary beneficiaries must survive the testatrix to have any beneficial interest in the estate. Because of this ambiguity the personal representative of the estate filed a petition with the circuit court for construction of this clause. Attorney Kenyon was appointed guardian ad litem for the minors.

On April 8, 1980, the circuit court construed the will to decree a *per capita* distribution among the eight named surviving residuary beneficiaries. On May 30, 1980, the guardian ad litem filed an appeal to the court of appeals on behalf of the minors. The cause was remanded to the circuit court for clarification of its order, and the court of appeals issued two unpublished decisions, one filed

June 16, 1981, and the other January 26, 1982, affirming the circuit court's construction of the will.

Thereafter the guardian ad litem petitioned the circuit court for payment of compensation in the amount of $8,374.68 ($9,475.83, less $1,101.15 which had been approved by the circuit court as compensation for services rendered prior to the appeal). The guardian ad litem's petition for compensation itemized the time spent and described the services rendered at the stated times. The petition further stated that if a hearing on the requested compensation were necessary, "an additional $375 per hearing date is requested."

Following a hearing, the circuit court refused to allow the guardian ad litem any compensation for services rendered in the appeal. The circuit court concluded that the payment of compensation to the guardian ad litem was a matter within the sole discretion of the circuit court under sec. 879.23(4)(d), Stats. 1981–82. The circuit court expressed several reasons for exercising its discretion to refuse all compensation: the appeal was not taken in the best interests of the minors; the prospect of the success on appeal was slight; and the guardian ad litem's requested compensation, which is payable from the estate, exceeded by almost one-third the amount which would have been payable to the minors if the appeal had been successful, the minors' interest in the estate being approximately $6,000.00.

The circuit court further concluded that the guardian ad litem could not recover compensation for the time he expended to collect his compensation since he did not have a specific contractual or statutory right for fees to collect a fee.

I.

The statutes relevant to compensating the court-appointed guardian ad litem in this case are secs. 757.48

and 879.23(4), Stats. 1981–82. Sec. 757.48 provides that "except as provided in sec. 879.23(4)," when a guardian ad litem is appointed by the court, the guardian ad litem shall be an attorney and *"shall* be allowed reasonable compensation for the services." (Emphasis supplied.) [1] By the use of the usually mandatory "shall," sec. 757.48, on its face, requires that a guardian ad litem who is an attorney be allowed reasonable compensation. We must then turn to sec. 879.23(4) to which sec. 757.48, refers. The parties agree that sec. 879.23(4)(d), which applies in probate matters, governs this case. Sec. 879.23(4)(d) provides that "the guardian ad litem *may* be allowed reasonable compensation, and *may* be allowed reimbursement for necessary disbursements, the amount of which shall be set by the court and paid out of the estate." [2] By the use of the usually permissive "may," sec.

[1] Sec. 757.48, Stats. 1981–82, provides:

"**757.48 Guardian ad litem must be an attorney.** (1) Except as provided in s. 879.23(4), in all matters in which a guardian ad litem is appointed by the court, the guardian ad litem shall be an attorney admitted to practice in this state and shall be allowed reasonable compensation for the services, reasonable compensation to be such as is customarily charged by attorneys in this state for comparable services. If the attorney of record is also the guardian ad litem, the attorney shall be entitled only to attorney fees and shall receive no compensation for services as guardian ad litem.

"(2) If the statutes do not specify how the fee of the guardian ad litem is paid, the ward shall pay such fee. The court may, however, in cases involving real or personal property in which the ward claims or may have a right or interest, order payment out of such property.

"(3) No guardian ad litem may be permitted to receive any money or property of his or her ward, nor may any bond be required of a guardian ad litem, but all money or property of his or her ward may be paid or delivered to a general guardian of his or her property subject to the exceptions of s. 880.04.

"(4) No person shall be appointed guardian ad litem for a plaintiff without the written consent of the person appointed."

[2] Sec. 879.23(4)(d), Stats. 1981–82, provides:

879.23(4), on its face, authorizes, but does not require, the circuit court to grant the guardian ad litem reasonable compensation payable out of the estate.

The guardian ad litem urges us to read sec. 757.48 and sec. 879.23(4)(d) together to require the circuit court to award reasonable compensation when the guardian ad litem is an attorney but only to authorize the circuit court to award reasonable compensation when the guardian ad litem is not an attorney.[3] We, like the court of appeals, reject this proposed construction of the statutes.

On its face sec. 879.23(4)(d) applies uniformly to attorney and nonattorney guardians ad litem for minors and incompetents in probate proceedings. There is no conflict between the discretionary terms of sec. 879.23 (4)(d) and the mandatory terms of sec. 757.48(1), because sec. 757.48(1) expressly excepts from its scope those cases governed by sec. 879.23(4)(d).

Because sec. 879.23(4)(d), not sec. 757.48(1), governs the compensation to the guardian ad litem in this case, we conclude that the circuit court was not required to award reasonable compensation to the guardian ad litem but that the award of reasonable compensation was a matter for the discretion of the circuit court. We agree with the court of appeals, however, for the reasons it set forth, that "where the guardian *ad litem* is a disinterested attorney, with no natural relationship to the ward, it is an abuse of discretion to withhold reasonable compensation for reasonable services performed by that attorney in the absence of exceptional circumstances not

"(d) The guardian ad litem may be allowed reasonable compensation and may be allowed reimbursement for necessary disbursements, the amount of which shall be set by the court and paid out of the estate."

[3] The guardian ad litem could have been a suitably qualified person who is not an attorney. See Sec. 879.23(4)(a), Stats. 1981–82.

present in this case." Slip opinion at page 10. As the court of appeals explained:

"The policy of affording court-appointed attorneys a just compensation for services they perform in assisting the court to function properly, and the special role of a guardian *ad litem* in that process, is well-established in this state. In Romasko, 108 Wis. 2d at 37–8, 321 N.W.2d at 125, the supreme court stated:

"[T]he appointment of a guardian *ad litem* is necessary for the validity of a court's order and is required to assure the integrity of its processes. The purpose in appointing a guardian *ad litem* then is not limited to the services that may be rendered to the ward. The guardian *ad litem's* service is rendered to the system of justice and, more specifically, to the particular court and the county in which an action is venued . . . .

"[T]he guardian *ad litem's* overarching duty is to assist the court in its governmental function of seeing to it that justice is done to those who are defenseless and who are the objects of the special concern of government.

"*Romasko* held that the county must pay the reasonable fees of a court-appointed guardian *ad litem* for a minor defendant in a personal injury action. The supreme court relied on the related early cases of *Carpenter v. County of Dane*, 9 Wis. 249, *274 (1859), the *County of Dane v. Smith*, 13 Wis. 654, *585 (1861), which 'emphasized the necessity of paying lawyers for services rendered upon order of the court.' 108 Wis. 2d at 39, 321 N.W.2d at 126. *Smith* invalidated a statute relieving the county from liability for such services as beyond the power of the legislature to enact, stating:

"Nor do we think that the legislature can leave with the courts the authority to order and employ, and at the same time destroy the implied promise to pay. The latter arises immediately out of the former, and is, in the law, so inseparably connected with it, that where the former exists the latter exists also. Unless the services are rendered gratuitously, which, under such circumstances, cannot be presumed, the promise of payment follows as of course."

13 Wis. at 658–59, *589, *quoted in Romasko*, 108 Wis. 2d at 40, 321 N.W.2d at 127.

"Court-appointed attorneys act under an implied promise that they will be compensated for their services to the court, as well as to their clients. This presumption has been recognized by the legislature's requirement in sec. 757.48(1), Stats., that guardians *ad litem* generally 'shall' receive a reasonable compensation, and is reflected in the supreme court's mandate that court-appointed attorneys in general 'shall' be compensated at the rates specified in SCR 81.02. Although the legislature has placed this presumption within the discretion of the trial courts with respect to guardians *ad litem* in probate cases, who may not be attorneys at law and whose services may not include the essential legal services for the court, we see no reason why the presumption should apply less forcefully when the guardian *ad litem* is a lawyer whose duty in the particular case requires the expenditure of time, effort, and skill unique to the profession of law. This is such a case." Slip opinion at pages 10–12.

The circuit court recognized, and rightly so, that the guardian ad litem has the right—if not the duty—to appeal from an adverse decision of a court if he believed the appeal meritorious and necessary for the protection of the children[4] and that he may be allowed reasonable compensation for his services in the appeal. The circuit court found, however, that this case was exceptional and that several factors warranted the denial of compensation to the guardian ad litem. The circuit court considered the appeal of the circuit court's order construing the will to be frivolous. The prospect of success in appeal was, in the view of the circuit court, slight, and the compensation the guardian ad litem requested exceeded the amount the estate would distribute to the minors if they succeeded.

The court of appeals reviewed the merits of the guardian ad litem's claim. The court of appeals concluded that

[4] See *Tyson v. Tyson*, 94 Wis. 225, 229–231, 68 N.W. 1015 (1896); *Jones v. Roberts*, 96 Wis. 427, 434, 70 N.W. 685 (1897); *Tyson v. Richardson*, 103 Wis. 397, 399–400, 79 N.W. 439 (1899). See also MacDonald, *Wisconsin Probate Law* sec. 2:22, p. 44 (8th ed. 1983).

although the guardian ad litem's position did not prevail, the appeal was not frivolous. We have reviewed the legal issues raised in the appeal, and we agree with the court of appeals that the appeal was not frivolous. The court of appeals evaluated the guardian ad litem's claim on appeal as follows:

"The trial court's central reason for denying compensation for all work expended in appealing its construction of the will appears to be its conviction that the appeal was frivolous, and so obviously doomed to failure that the guardian *ad litem's* decision to seek review was professionally irresponsible. This conviction is incorrect.

"The initial appeal raised an important legal question whose resolution was difficult. The question was whether a scrivener's notes, made contemporaneous with a will conference, were entitled as a matter of law to greater weight than his recollection regarding the testator's intent some twelve years after the will was drafted. The panel was initially divided on how that question should be answered. We took the unusual step of remanding the case to the trial court for clarification of a ruling we found obscure. Additional deliberations concerning this court's role in discerning a testator's intent—a matter which the supreme court has held to be a question of fact —followed the trial court's response to the remand. Our ultimate resolution affirming the trial court's ruling reflected this court's troubled deference to that court's role as the ultimate fact-finder, whose opportunity to weigh the credibility of the scrivener's testimony is not available to a reviewing court. The appeal gave us difficulty in part because the appellant's arguments were so well presented. The appeal was not frivolous." Slip opinion at pages 12–13.

Because the appeal was not frivolous and there are no other exceptional circumstances in this case justifying the circuit court's denial of all compensation to the guardian ad litem for services rendered on appeal, we conclude that the guardian ad litem is entitled to reasonable compensation for his services on appeal. The question then arises as to what constitutes reasonable com-

pensation for the guardian ad litem in this case. The court of appeals remanded the cause to the circuit court, directing it to determine the amount due the guardian ad litem by first ascertaining the reasonable time spent and expense incurred in preparing the first set of appellate briefs, in attempting to effect settlement as the appeal progressed, and in the preparation of the supplemental appellate briefs insofar as they addressed the merits of the circuit court's response to remand. The court of appeals further directed the circuit court to ascertain the reasonable time the guardian ad litem spent working on the case considering factors this court set forth in *Estate of Tierney*, 70 Wis. 2d 438, 444, 234 N.W.2d 357 (1975), and to compensate the guardian ad litem for that reasonable time according to the rates set forth in SCR 81.02.[5]

---

[5] For a discussion of the application of SCR 81.02 to a guardian ad litem, see *Romasko v. Milwaukee*, 108 Wis. 2d 32, 41, 321 N.W.2d 123 (1982).

The court of appeals explained the fee rate as follows:

"Section 757.48(1), Stats., was recently construed by the supreme court to be one which 'fixes' a fee within the meaning of SCR 81.01 and 81.02. *Romasko v. Milwaukee*, 108 Wis. 2d 32, 41, 321 N.W.2d 123, 127 (1982). SCR 81.01 provides:

"Notwithstanding any provision of the statutes, *in all cases where the statutes fix a fee* and provide for the payment of expenses of an attorney to be appointed by the court to perform certain designated duties, *the court appointing the attorney*, after the services of the attorney have been performed and the disbursements incurred, *shall fix the amount of his or her compensation* for the services and provide for the repayment of disbursements *in such sum as the supreme court has specified in SCR 81.02.* (Emphasis supplied.)

"SCR 81.02 provides:

"(1) Attorneys appointed by any court to provide legal services for that court, for judges sued in their official capacity, for indigents and for boards, commissions and committees appointed by the supreme court shall be compensated at the following rates:

"(a) Court time, $50 per hour.

"(b) Office time, $35 per hour.

If fees on the appeal are to be awarded, the estate apparently agrees with the court of appeals' disposition of this issue. The guardian ad litem does not, but it is not easy to understand his position. The guardian ad litem asserts that the standards of performance for privately retained counsel and a court-appointed guardian ad litem are different and that "in certain circumstances, the work required of a guardian ad litem would be unreasonable if done by privately retained counsel; nevertheless, it is required and must be compensated if guardians ad litem are to be of use to the courts and the wards of the courts." (Reply brief at pp. 4–5.) The guardian ad litem apparently asserts that the circuit court should determine what services were required of him to protect the minors in the case and that the circuit court should award him compensation for the time he spent on those services at the rates set forth in SCR 81.02, even if the time expended or the total compensation considered would be unreasonable under the standards set forth by this court for attorney fees.

As we understand the guardian ad litem's arguments, he claims that the court of appeals erred in directing the circuit court to apply the factors set forth by this court in *Estate of Tierney*, 70 Wis. 2d 438, 444, 234 N.W.2d

"(c) Travel time outside the county in which the attorney's principal office is located, $25 per hour."

"These supreme court rules were not cited to the trial court by either party, who were apparently unaware of the prior to this appeal. The guardian *ad litem* concedes that the rates fixed by SCR 81.02 should apply to his compensation, noting that lower rates for court-appointed attorneys than those charged to private clients are based on justifications as certainty of payment from the public treasury and the general obligation of all lawyers to serve the court system. *State v. Sidney*, 66 Wis. 2d 602, 610, 225 N.W.2d 438, 442 (1975); *Richardson v. Tyson*, 110 Wis. 572, 579, 86 N.W. 250, 252 (1901). He computes his compensation due under those rates at $4,905.25 to the time of the fee hearing, rather than the $8,374.68 previously sought." Slip op. pp. 7–8.

357 (1975), in assessing the reasonable time he spent on this matter. The court of appeals wrote as follows:

"In awarding or approving an attorney fee in cases where the fee is subject to the trial court's discretion, a variety of factors must be considered. In *Estate of Tierney,* 70 Wis. 2d 438, 444, 234 N.W.2d 357, 360 (1975), the supreme court said:

" 'The things to be taken into consideration in determining the compensation to be recovered by an attorney are the amount and character of the services rendered, the labor, the time, and trouble involved, the character and importance of the litigation, the amount of money or value of the property affected, the professional skill and experience called for, and the standing of the attorney in his profession; to which may be added the general ability of the client to pay and the pecuniary benefit derived from the services.'

"*Id.* (quoting *Herro, McAndrews & Porter v. Gerhardt,* 62 Wis. 2d 179, 184, 214 N.W.2d 401, 404 (1974)). These factors are pertinent in assessing the reasonable time spent by a court-appointed attorney, whose hourly rate is governed by SCR 81.02, as well as in assessing reasonable compensation to privately retained attorneys whose fees are subject to court scrutiny.

"In assessing these factors with respect to a fee requested by an attorney appointed as a guardian *ad litem,* it must be recognized that the attorney does not satisfy the duties of that role by a 'mere perfunctory performance.' *Tyson v. Tyson,* 94 Wis. 225, 229, 68 N.W. 1015, 1016 (1896), and that those duties may require him or her to take a position adverse to those of other members of the family. See *Parsons v. Balson,* 129 Wis. 311, 317, 109 N.W. 136, 138 (1906). A guardian *ad litem's* duty may also require the appeal of rulings adverse to the ward, despite the objections of others interested in the estate. *Tyson,* 94 Wis. at 230–31, 68 N.W. at 1016–17. A guardian *ad litem* who negligently fails to protect the interests of the ward may be liable to the ward. *Tyson,* 94 Wis. at 229, 68 N.W. at 1016. A guardian ad litem should take an adversary position whenever the ward's interests are 'liable, by any possibility, to be impaired.' *Will of Rice: Cowie v. Strohmeyer,* 150 Wis. 401, 475, 136 N.W. 956, 984 (1912)." Slip opinion at pages 13–14.

The guardian ad litem asserts, and properly so, that the factors set forth in *Tierney* relate to the total compensation which is reached by determining the hourly rate and time spent on a case.

As Mary Hohmann and James Dwyer explain in their history of guardians ad litem in Wisconsin, there is a jungle of law relating to compensation of guardians ad litem.[6] It is helpful to set forth several factors that can be culled from *Tierney*, which may serve as guidelines for the circuit court in determining what is a reasonable time for a guardian ad litem to expend on a case. The myriad of factors to be considered include:

(1) the tasks necessary to perform the legal service properly;[7]

(2) the time, labor and skill required to perform the tasks properly and the difficulty or novelty of the issues involved;

(3) the importance and character of the litigation;

---

[6] Hohmann and Dwyer suggest that the law has developed along two separate but converging paths: Who pays? How much? Hohmann & Dwyer, *Guardians ad Litem in Wisconsin*, 48 Marq. L. Rev. 445, 464–72 (1965).

[7] The statutes do not prescribe the tasks the guardian ad litem is expected to perform or the nature and extent of responsibility of a guardian ad litem. Case law prescribes the duties of guardians ad litem, and the duties depend on the nature of the case, *i.e.*, custody, termination of parental rights, probate matters. Although this state has a long history of providing guardians ad litem for minors in trust and estate matters, only general guidance is provided for guardians ad litem in our cases. The seminal cases describing the duty of a guardian ad litem representing the interests of a minor in a trust matter are the *Tyson* cases written by Justice Marshall at the turn of the century. For a discussion of the *Tyson* cases and a history of guardians ad litem in Wisconsin, see Hohmann & Dwyer, *Guardians ad Litem in Wisconsin*, 48 Marq. L. Rev. 445 (1965).

(4) the amount of money or property affected; and

(5) the time limitations imposed by the client or the circumstances.

In applying the *Tierney* factors determining the reasonable number of hours the guardian ad litem spent on the matter, the circuit court must recognize the duties of the guardian ad litem and the special relationships involved among the guardian ad litem, the minors, and the court. The guardian ad litem undertakes significant responsibilities and burdens that a privately retained attorney does not generally encounter. Performing legal services for an adult and acting as court-appointed guardian ad litem for a minor raise different concerns for the attorney.

The court-appointed guardian ad litem is obligated by the nature of the position not to give primary consideration to compensation or to the amount of money or property affected, but to perform reasonable services to protect the interests of the minor.

When the client is a competent adult, the client may determine how complete a job the attorney should do by determining how much time the client wishes the attorney to spend on the case and how much money the client wishes to pay for the attorney's services. When the client is a minor, the client cannot make a decision about lawyer time and compensation. The guardian ad litem must, however, do the job competently and to the fullest extent reasonable in a particular case.

Furthermore, the guardian ad litem's duty is not only to be an advocate for the minor client but also to assist the court in its governmental function of seeing to it that justice is done to minors and others who are the objects of the special concern of government.

The guardian ad litem must nevertheless be concerned about the time he is expending on a matter. Our court in the case of appointed defense counsel has admonished counsel to be "ever zealous not to spend more time in preparation of the defense than is necessary" and counsel must be "practical and use good judgment." *Schwartz v. Rock County,* 24 Wis. 2d 172, 179–180, 128 N.W.2d 450 (1964). This admonition applies equally to guardians ad litem.

As we understand it, the essence of the guardian ad litem's objection to the *Tierney* factors[8] is that he fears

---

[8] SCR 20.12 of the Code of Professional Responsibility, sets forth factors to be considered as guides in determining the reasonableness of a fee. SCR 20.12 provides as follows:

"SCR 20.12 Fees for legal services. (1) A lawyer may not enter into an agreement for charge or collect an illegal or clearly excessive fee.

"(2) A fee is clearly execessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

"(a) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.

"(b) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

"(c) The fee customarily charged in the locality for similar legal services.

"(d) The amount involved and the results obtained.

"(e) The time limitations imposed by the client or by the circumstances.

"(f) The nature and length of the professional relationship with the client.

"(g) The experience, reputation and ability of the lawyer or lawyers performing the services.

"(h) Whether the fee is fixed or contingent.

"(3) A lawyer may not enter into an arrangement for charge or collect a contingent fee for representing a defendant in a criminal case."

that in determining the reasonable number of hours he expended or in determining his total compensation, the circuit court will give undue weight and consideration to the amount of money or property affected, that is, to the pecuniary benefit to the minors to be derived from the services and the value of the entire estate from which the compensation is paid.[9]

The determination of the number of hours reasonably expended and the quality of service of the guardian ad litem cannot, as we have explained before, be confused with or determined solely by the amount of compensation available. *Cf. State v. Kennedy*, 24 Wis. 2d 172, 180, 128 N.W.2d 450 (1964). Nevertheless, we agree with the court of appeals that the court must consider the amount of money or property affected in awarding total compensation to the guardian ad litem. The court having supervisory control over personal representatives of estates has the duty to safeguard funds within the control of the personal representative. *Will of Willing*, 190 Wis. 406, 412, 209 N.W. 602 (1926).

This court has noted in probate cases that "while the amount involved should be considered in determining the reasonable value of professional services . . . it is only one element . . . ." *Will of Willing*, 190 Wis. 406, 415, 209 N.W. 602 (1926). Similarly, sec. 851.40, Stats. 1983–84, which establishes the basis for payment of just and reasonable compensation to an attorney performing services for the estate of a deceased person,[10] provides

---

[9] The guardian ad litem is understandably uncomfortable in being asked to consider, when rendering services to his clients, the financial interests of persons other than his clients and to balance the financial interests of the adversary, the estate and the minors inasmuch as his compensation is paid from the estate.

[10] Sec. 851.40(2), Stats. 1983–84, reads as follows:

"(2) Any personal representative, heir, beneficiary under a will or other interested party may petition the court to review any attorney's fee which is subject to sub. (1). If the decedent

that the court consider "the sufficiency of assets properly available to pay for the services, except that the value of the estate may not be the controlling factor." Sec. 851.40(2)(e). Although these statements generally derive from situations where the estate is large and the question is whether the attorney's fee should be based on the size of the estate, we think the principle that the sufficiency of assets is only one element to be considered is applicable in the smaller estate too. In both the large and the small estates, the court has the duty to preserve funds within the control of persons the court supervises.

After determining the reasonable number of hours expended by the guardian ad litem and multiplying that number of hours by the rate specified in SCR 81.02, the circuit court reaches a total compensation figure. This figure, however, is the maximum compensation to be awarded in this type of case rather than the amount that must be awarded to the guardian ad litem. Even when the total compensation calculated by multiplying the reasonable time by the rate specified in SCR 81.02 would be reasonable compensation for the guardian ad litem, the circuit court may be justified in reducing the compensation to a smaller sum in light of the size of the estate from which the guardian ad litem draws compensation and the court's duty to preserve funds. A reasonable number of hours worked at the reduced rate of

---

died intestate or the testator's will contains no provision concerning attorney fees, the court shall consider the following factors in determining what is a just and reasonable attorney's fee:

"(a) The time and labor required.

"(b) The experience and knowledge of the attorney.

"(c) The complexity and novelty of the problems involved.

"(d) The extent of the responsibilities assumed and the results obtained.

"(e) The sufficiency of assets properly available to pay for the services, except that the value of the estate may not be the controlling factor."

SCR 81.02 may be too much a burden for an estate to bear, given the size of the estate. In determining the reasonableness of compensation to the guardian ad litem in light of the size of the estate, the circuit court must also consider the reasonableness of the opposing parties in dealing with the claims of the minors. Reduced compensation to the court-appointed attorney, below the compensation comparable to private practice, is a burden Wisconsin attorneys traditionally have borne as part of their obligation to serve the public and the courts in the administration of justice. *State v. Sidney,* 66 Wis. 2d 602, 610, 225 N.W.2d 438 (1975) ; *State v. Kenney,* 24 Wis. 2d 172, 180–81, 128 N.W.2d 450 (1964).

The guardian ad litem also asserts that he is entitled to compensation for his efforts arising out of his complaint that opposing counsel was in violation of the Code of Professional Responsibility. The court of appeals concluded that on the basis of this record the guardian ad litem should not be compensated for this time. We agree with the court of appeals and adopt the reasoning it set forth:

"A different question is presented with respect to the appellant's assertions that the code of professional responsibility was violated by the continuing representation of the estate by its present counsel. As we noted in our opinion following remand, the guardian *ad litem's* delay in raising the issue is an indication that the violation, 'if it occurred, is not obvious.'[10] It is also not obvious to this court how the assertion of ethical considerations at that point in the litigation could have served the interests of the ward. If the assertions were made for a reason other than the service of those interests, we believe the time spent in raising them is not compensable from the estate.[11]"

---

[11] In *Ennis v. Ennis,* 88 Wis. 2d 82, 97, 276 N.W.2d 341, 347 (Ct. App. 1979), this court held that attorneys, as well as judges, have the responsibility to protect the

legal system from abuse caused by violations of the code of professional responsibility for attorneys. In some cases efforts to meet that responsibility may also serve the interests of the client, who may thus be properly chargeable for those efforts. Absent a clear link between the interests of enforcing professional ethics and the client's interest, however, the client should not bear this expense."

II.

The second issue in this appeal is whether the circuit court erred in refusing to allow the guardian ad litem compensation from the estate for his efforts in collecting the reasonable compensation to which he was entitled. The court of appeals affirmed, Judge Bablitch dissenting, that part of the circuit court's order disallowing a "fee on a fee." Gartzke, J., slip opinion at page 1. This decision means that the guardian ad litem would receive no compensation for his work on the hearing on compensation following remand by the court of appeals or for his work on the appeal to the court of appeals or on the review in this court on the issue of his compensation. We disagree with the court of appeals, and we reverse this part of their decision.

The court of appeals based its decision to disallow a fee on a fee because "[n]o other profession is allowed a fee on a fee. As a general rule, a doctor, architect, engineer or dentist does not recover the reasonable expense of collecting a reasonable professional fee, in the absence of extraordinary circumstances. Neither should attorneys, whether acting as guardians ad litem or otherwise." Gartzke, J. slip opinion at page 1.

This rationale ignores a fundamental difference between professionals, including attorneys, doctors engineers et al. and a guardian ad litem. The former are generally privately retained and supervised by competent adult clients. They can, within limits provided by law,

contract for compensation and refuse to undertake the task. In contrast, guardians ad litem, like other court-appointed attorneys whose function is to aid not only the client but also the court in protecting minors and other classes of people who may not be able to protect themselves, are appointed because they are deemed essential to the functioning of the justice system. Attorneys in Wisconsin are expected to accept court appointments whenever feasible as part of their pro bono service to the community. *State v. Kenney,* 24 Wis. 2d 172, 181, 128 N.W.2d 450 (1964).

The court of appeals interprets *Richardson v. Tyson,* 110 Wis. 572, 86 N.W. 250 (1901), as stating that "only under 'extraordinary conditions' should an estate be required to pay the legal expenses incurred by a guardian ad litem when defending the reasonableness of his or her fee." Gartzke, J. slip opinion at page 1. The court of appeals did not find extraordinary circumstances in this case to support a fee on a fee.

Our reading of *Richardson* coincides with that of Judge Martha Bablitch. Accordingly we adopt her reasoning which leads to the conclusion that the guardian ad litem is entitled to compensation for the time and effort he was obligated to spend in meeting the opposition of the estate to the fee, to the extent that the opposition was unreasonable. In this way the guardian ad litem is not penalized if the estate unreasonably objects to the compensation of the guardian ad litem. Judge Bablitch explained her position as follows:

"In *Richardson v. Tyson,* 110 Wis. 572, 86 N.W. 250 (1901), the supreme court held that a guardian *ad litem's* fees for establishing the defending fees incurred for a successful challenge on appeal of a ruling adverse to his wards was compensable under circumstances very similar to this case. As in this case, the guardian *ad litem* was young and inexperienced, and was strenuously opposed on the merits by other parties through counsel whose skills and reputation were well-established. 110

Wis. at 581, 86 N.W. at 252–53. Following the appeal on the merits, the guardian *ad litem's* petition for compensation and expenses was denied. He appealed again, hiring independent counsel to represent him. The supreme court reversed and remanded with instructions to award reasonable compensation as a lien against the estate. *Tyson v. Richardson*, 103 Wis. 397, 403, 79 N.W. 439, 441 (1899). In doing so, it noted that the guardian *ad litem* had a duty to make a vigorous defense of the wards' case, including the appeal of an adverse decision 'if reasonable doubt as to its justice existed,' 103 Wis. at 400, 79 N.W. at 440, and that trial courts must 'encourage faithful service' by guardians *ad litem* by using 'all reasonable means to see that such officer is not compelled to go without proper remuneration for his services' where sufficient property existed to pay for them. 103 Wis. at 401, 79 N.W. at 440.

"Following the second remand, there was an adversary trial on the petition for compensation before a referee, at which the guardian *ad litem* was again represented by independent counsel. The referee awarded compensation to both the guardian *ad litem* and his counsel. These awards were increased by the circuit court on a motion for modification.

"On the third appeal, the supreme court again reversed, holding that the awards were too high in light of the professional duty of guardians *ad litem*, as well as other court-appointed attorneys, to serve at a lower rate of pay than 'the highest prices demanded and paid between individuals free to contract as they will.' 110 Wis. at 579, 86 N.W. at 252. It disallowed that portion of independent counsel's fees for services prior to the hearing before the referee, 110 Wis. at 587, 86 N.W. at 255, holding that compensation of such counsel from an estate could only be proper 'under extraordinary conditions.' 110 Wis. at 585–86, 86 N.W. at 254. Since no such conditions existed prior to the contested fact finding hearing, and counsel had been initially hired solely as a matter of the guardian *ad litem's* 'convenience' to perform work on the second appeal during his absence from the state, counsel's fees for those services could be considered 'only as bearing upon the amount of proper allowance to the guardian' and could not be charged as 'a distinctive dis-

bursement' against the estate. 110 Wis. at 587, 86 N.W. at 255.[12]

"The supreme court's conclusion that the guardian *ad litem* was to be compensated for his own necessary services in presenting and defending his fee, as well as for services in which 'extraordinary conditions' justified hiring independent counsel, is evident from the following language:

"The [contention] that a guardian *ad litem* can have no allowance either for services or, more especially, for attorney's fees paid in the hearing on his account, is not supported by the citation of any authorities, but the contrary seems well sustained when the officer acts fairly, makes full disclosure, and does not make unreasonable demands for credit or allowance. [Citations omitted.] This obviously must be so if the guardian is to receive fair compensation for services. It would be contradictory to fix such fair and reasonable compensation if the sum so fixed must be reduced to something less by imposing on him the necessary expense of passing his accounts,—a step which his duty requires. *Tyson*, 110 Wis. at 585, 86 N.W. at 254.[13]

"The supreme court came to the same result with respect to a general guardian's fees in *Guardianship of Messer*, 242 Wis. 66, 71, 7 N.W.2d 584, 586 (1943), stating:

"Where a guardian acts in good faith . . . and the only issue [is] the reasonableness of his fees and expenses, he is entitled, as a matter of right, to legal services in his behalf, and entitled to credit therefor in a reasonable sum in his guardianship account.

"If the guardian did not act in good faith and was derelict in the performance of his duties . . . he should defend his conduct at his own expense."

"A similar approach has developed in federal caselaw governing the award of attorney fees in civil rights actions,[14] which has been specifically endorsed by the Wisconsin Supreme Court in *Thompson v. Village of Hales Corners*, 115 Wis. 2d 289, 309, 340 N.W.2d 704, 713 (1983). See also *Shands v. Castrovinci*, 115 Wis. 2d 352, 356, 359, 340 N.W.2d 506, 508, 509 (1983), and *Watkins v. LIRC*, 117 Wis. 2d 753, 766, 345 N.W 2d 482, 488 (1984), allowing fees for appeals of issues relating solely

to attorney fee awards in a case brought under Wisconsin's unfair trade practices law and a case brought under the Wisconsin Fair Employment Act, respectively.

"These cases require an award of compensation for efforts reasonably necessary to recover a statutorily authorized or required fee for legal services deemed essential to the court system or the system of justice generally. A guardian *ad litem's* services have long been recognized as essential to aid the court in protecting minors and other classes of helpless persons from being deprived of their rights in a variety of circumstances. Ardent protection of such rights is likely to be offense to persons with standing to oppose a reasonable fee for that service. To hold that a reasonable fee must be reduced by the cost of meeting such opposition—even where the opposition is unreasonable—is likely to discourage the active defense of rights which have been recognized as deserving of special protection. Such a policy is, as the *Tyson* court said, 'contradictory.' I believe that *Tyson* is binding precedent which this court must follow.

"In this case, the estate's opposition to the payment of any fee for taking an appeal which we have found to be meritorious, even though ultimately unsuccessful, was unreasonable. Its opposition to the rate at which the appellant billed his time was reasonable in light of the limits set on those rates by SCR 81.02, which the estate did not cite to the trial court. The reasonableness of its opposition to the total time billed is yet to be determined. I would hold that the appellant is entitled to recover compensation for the costs he necessarily incurred in meeting the opposition he encountered, to the extent it was unreasonable."

---

"[12] The majority mistakenly assumes that the 'extraordinary conditions rule' in *Richardson* applies to compensation of the guardian *ad litem* at the fee hearing. That the supreme court's 'rule' was intended to apply only to the employment of independent counsel is inescapably clear from the following language:

"The question *whether employment of an attorney* on such hearing should be compensated out of the estate as an expense is a delicate one. Only under extraordinary conditions can it be proper. Usually, the guardian should

be content to submit a plain statement of his services and disbursements to the court under which he has performed them, leaving to that court to fix the amount in the light of its own opportunity for observation and of any evidence it may desire. Ordinarily, vehement contention is not to be expected, *and necessity for a hired advocate can hardly exist. Notwithstanding all these considerations, however, it still remains in each case a question for the court whether the extraordinary circumstances do exist to make necessary or proper such employment,* and whether the services rendered by the attorney are merely those which the guardian might himself have rendered, or are such as, owing to the situation, he could not properly perform. (Emphasis supplied.) 110 Wis. at 585–86, 86 N.W. at 254.

"[13] The court specifically noted that the guardian *ad litem's* research following his petition for a fee, which related solely to his right to collect the fee from the estate, was 'a field of inquiry which the court must investigate, and in which aid from the guardian [*ad litem*] was due and necessary.' 110 Wis. at 586, 86 N.W at 254.

"[14] *See generally* E. Richard Larson, *Federal Court Awards of Attorney's Fees* 171–74 (1981)." Slip opinion at pages 16–20, 24–25.

For the reasons set forth, we affirm the decision of the court of appeals in part and reverse it in part. The cause is remanded to the circuit court for reconsideration of the requested compensation for the appeal to the court of appeals on the interpretation of the will and for consideration of the requested compensation of the efforts expended in collecting his compensation to the extent that the opposition from the estate which he encountered was unreasonable. The circuit court should determine the total compensation due the guardian ad litem by first ascertaining the reasonable time spent and expense incurred in preparing the appeals and review and in attempting to effect settlement as the appeal progressed. That time should be compensated at the rates specified in SCR 81.02. The total compensation may be reduced, how-

ever, to the extent that it is disproportionately large with respect to the size of the entire estate. Unless the guardian ad litem can show a relation between his clients' interest on the merits of the appeal and his efforts in presenting the ethical matters raised in his briefs to the court of appeals and this court, the time expended to present these matters should not be compensated from the estate.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part; the cause is remanded to the circuit court for proceedings consistent with this opinion.